**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
|     Appellee, | |
| v. | Case No. 23-3143 |
| LAUREN HANDY, | |
|     Appellant. | |

## DEFENDANT-APPELLANT LAUREN HANDY'S MOTION FOR RELEASE PENDING SENTENCING

Pursuant to Fed. R. App. P. 9(a)(3) (providing that "[t]he court of appeals or one of its judges may order the defendant's release pending the disposition of the appeal"), Defendant-Appellant Lauren Handy hereby moves for release pending her appeal from the District Court's order detaining her before sentencing.

## INTRODUCTION

On August 29, 2023, Defendant Lauren Handy was convicted of a misdemeanor violation of the Freedom of Access to Clinic Entrances (FACE) Act, as well as a felony violation of 18 U.S.C. § 241, conspiracy against rights, predicated solely on the misdemeanor FACE violation.

The District Court (erroneously) held that such a violation is a "crime of violence" under 18 USC § 3156(a)(4) and ordered Defendant immediately detained, with sentencing not yet scheduled but expected to be at least several months away.

The Supreme Court has recently taught that, for a violation to be a "crime of violence," it must categorically and always require the Government to prove that a defendant used or threatened violent physical force against another's person or property. While a misdemeanor FACE Act violation on the basis of force *may* require a significant application of force—sufficient to injure—the Act does not *require* that one's "force" be directed or targeted at another, nor that it be exercised with intent to harm another.

FACE thus allows a misdemeanor conviction based on the use of significant force (or threat of force) (1) recklessly or (2) against one's *own* person or property. Moreover, the FACE Act's separate prohibition on "physical obstruction" also does not always require that a jury find it involved violent force. For these reasons, a misdemeanor FACE Act conviction is not a "crime of violence", and Defendant should be freed pending sentencing.

# STATEMENT OF JURISDICTION

Proceedings in the court below were initiated by the filing of an indictment on March 24, 2022. (D.D.C. Dkt. No. 1). A Superseding Indictment was filed October 14, 2022. (D.D.C. Dkt. No. 113).

A jury returned a verdict finding Ms. Handy guilty of the offenses charged in the Superseding Indictment on August 29, 2023. The District Court ordered Ms. Handy and the four co-defendants with whom she was tried to be taken into custody immediately. On August 31, 2023, the District Court denied Handy's motion for reconsideration of its decision ordering immediate detention. Handy timely filed her notice of appeal to this Court that same day, August 31, 2023. Dist. Ct. Dkt. 398.

This Court possesses subject-matter jurisdiction under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291. Appellant timely filed a notice of appeal on August 31, 2023. Therefore, this Court has jurisdiction over this appeal from the District Court's Order pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291 and Rules 4(b)(1)(A) and 9(a) of the Federal Rules of Appellate Procedure.

**STATEMENT OF THE CASE**

This case arises from federal criminal charges filed against Ms. Handy and nine co-defendants after they engaged in a protest at and inside a Washington, D.C., abortion clinic on October 22, 2020. The Government indicted the Defendants on March 24, 2022, and then filed a Superseding Indictment on October 14, 2022. (D.D.C. Dkt. No. 113). The Superseding Indictment charged each defendant with (1) conspiracy against rights in violation 18 U.S.C. § 241, a felony; and (2) a misdemeanor violation of the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248. *Id.*

The Superseding Indictment alleged that the purpose of Defendants' purported conspiracy was "to create a blockade to stop the Clinic from providing, and patients from obtaining, reproductive health services." (*Id.* at ¶9). Largely tracking the FACE Act's statutory language, it further alleged the Defendants, "aiding and abetting one another, did by force and physical obstruction, intentionally injure, intimidate, and interfere with, and attempt to injure, intimidate, and interfere with, Patient A and the employees of the Clinic, because Patient A was obtaining, and the Clinic was providing, reproductive health services." (*Id.* ¶38).

The Superseding Indictment does not allege that any of the Defendants, let alone Ms. Handy, intentionally inflicted physical harm or injury on any person. To the contrary, the most that could be marshalled by the Government in terms of physical injury was the allegation that Defendant Jay Smith (not Ms. Handy) "forcefully backed into the clinic" and in the process caused a nurse "to stumble and sprain her ankle." (*Id.* ¶23). No Defendant is alleged to have carried or used any kind of weapon (*e.g.,* firearm, knife, club, brick) during this protest, and the proof at trial likewise showed the absence of any weapon being used.[1]

Trial of Ms. Handy and four co-defendants began August 15, 2023. On August 29, 2023, a jury found all Defendants guilty on both counts charged in the Superseding Indictment. At the Government's request, the verdict form also contained special interrogatories asking the jurors to determine whether the FACE violation, if found, was committed by "force" or "physical obstruction." The jury returned a finding of both "force" and "physical obstruction" as to Ms. Handy and each of the four

---

[1] The Government also did not charge that "bodily injury" or "death" "result[ed]" from Defendants' actions, and thus tacitly conceded that they committed only non-bodily injury violations (i.e., misdemeanors) under the FACE Act. *See* 18 U.S.C. § 248(b)(2).

co-defendants tried. *See* Minute Entries on D.D.C. Dkt for August 29, 2023.

Upon the verdict being returned and announced, the District Court directed that each of the Defendants, none of whom had been detained in custody prior to trial, be taken into custody because they had been convicted of a "crime of violence." The next day, August 30, 2023, Appellant Handy filed an emergency motion for reconsideration of the order of detention pending sentencing (Dkt. No. 387). The Government filed a response in opposition. (Dkt. No. 395). Appellant Handy also filed a reply. (Dkt. No. 396).

By order entered August 31, 2023, the District Court denied the motion for reconsideration of detention and in so doing reaffirmed its finding that Defendants had been convicted of a "crime of violence." (Dkt. No. 397). Appellant Handy filed a notice of appeal to this Court from that order the same day. (Dkt. No. 398).

Ms. Handy continues to be held in custody pending sentencing; no date has been set for sentencing.

# ARGUMENT

Defendant Handy is entitled to emergency relief from the District Court's order detaining her in federal custody prior to sentencing for her misdemeanor conviction under the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248, and her felony conviction for conspiracy under 18 U.S.C. § 241 (which is predicated entirely on an alleged conspiracy to commit a misdemeanor under FACE). Under federal statute and binding precedents from this Court and the Supreme Court, a misdemeanor FACE conviction is not *categorically* a crime of violence that triggers such a pre-sentence detention. The District Court's order concluding otherwise was erroneous and should be reversed.

Under 18 U.S.C. § 3143(a)(2), pre-sentence detention is required when, inter alia, the defendant has been convicted of a "crime of violence" as a categorical matter. But a FACE Act conviction for use of "force" and "physical obstruction" is not *categorically* a crime of violence.[2] Thus Ms. Handy should be immediately released from custody under the more

---

[2] The same is true of Ms. Handy's conspiracy conviction, which, as noted, is predicated on a conspiracy to violate the FACE Act.

lenient terms of 18 U.S.C. § 3143(a)(1), as discussed below, prior to her sentencing.

## I. A "crime of violence" is one that always requires a finding of actual, threatened, or attempted force.

"Crime of violence" here means "(A) an offense that has as an element . . . the use, attempted use, or threatened use of physical force against the person or property of another; [or] (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[3] 18 U.S.C. § 3156(a)(4).

Precedent teaches that courts must apply the "categorical rule" in interpreting "crime of violence" for purposes of pre-trial detention under 18 U.S.C. § 3143(a)(2) (referencing 18 U.S.C. § 3142(f)(1)(A) ("crime of violence")). *See United States v. Singleton*, 182 F.3d 7, 11 (D.C. Cir. 1999) ("Each … prong[] of the statutory definition [of 'crime of violence' in § 3156(a)(4)] identif[ies] a fixed category of offenses that does not expand or contract based on the factual peculiarities of a particular case.").

---

[3] Section 3156(a)(4)(C), alternatively defining "crime of violence" to include "any felony under chapter 77, 109A, 110, or 117," is not at issue here, as the FACE Act and 18 U.S.C. § 241 are located in chapter 13.

Under that approach, "the underlying facts of a particular case are irrelevant." *Id.* at 12.

Last year, the Supreme Court instructed how to apply the categorical rule when interpreting a materially identical definition of "crime of violence" in 18 U.S.C. § 924(c)(3), which provides for increased punishment when the defendant uses a firearm in connection with a "crime of violence." *See United States v. Taylor*, 142 S. Ct. 2015, 2019 (2022). The Court confirmed that the "elements clause"—i.e., an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (*see* § 924(c)(3)(A); § 3156(a)(4)(A))—by its very terms "demand[s]" a "categorical inquir[y]." *Id.* at 2020. And it clarified that inquiry: "[t]he *only* relevant question is whether the federal felony at issue *always requires the government to prove*—beyond a reasonable doubt, as an element of its case, the use, attempted use, or threatened use of force." *Id.* (emphasis added).[4]

---

[4] *Taylor* also confirmed that the "residual clauses"—§§ 3156(a)(4)(B) & 924(c)(3)(B) (i.e., a felony that "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense")—are unconstitutionally vague under controlling Supreme Court precedent. 142 S. Ct. at 2023 (citing *United States v. Davis*, 139 S. Ct. 2319, 2336)).

Accordingly, a FACE violation can be a "crime of violence" only if it satisfies the "elements clause" as a categorical matter—that is, if the government must *always* show an actual, attempted, or threatened *use of physical force against another* to prove a violation of FACE. It does not.

Further, the Supreme Court has generally applied a "modified categorical rule" when a crime may be committed by alternative elements. *Mathis v. United States*, 579 U.S. 500, 515 (2016). "Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 505-06. However, the Supreme Court "distinguish[es] between statutes listing alternative elements and those setting out merely alternative *means* of commission." *Id.* at 514 (cleaned up). "[A] means . . . is by definition *not* necessary to support a conviction," and "a court may *not* look behind the elements of a generally drafted statute to identify the means by which a defendant committed a crime." *Id.* at 515-16 (cleaned up). The Supreme Court provides some guidance in distinguishing elements and means. For example, "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Id.* at 518. But if a

statute identifies "things . . . which need not be" charged, those are means. *Id.*

However, courts may look to "extra-statutory documents" only when "one statutory phrase correspond[s] to the generic crime and another [does] not." *Descamps v. United States*, 570 U.S. 254, 265 (2013). "When a statute defines" all of the elements at issue "overbroadly," i.e., in a manner that "does not correspond to the relevant generic offense . . . the inquiry is over." *Id.*; *accord Mathis*, 579 U.S. at 504, 505 (categorical approach "focus[es] solely on whether the *elements* of the crime of conviction sufficiently match the elements of" the generic offense, and modified approach applies only where a statutory alternative "*would match*" the generic crime-of-violence offense) (emphasis added). In short, "[s]entencing courts may look only to the *statutory definitions—i.e.*, the elements— of a defendant's [] offenses," and "if the statute sweeps more broadly than the generic crime, a conviction under that law" is not a crime of violence. *Descamps*, 570 U.S. at 261 (first emphasis added, internal quotes omitted).

As noted, the District Court found that Ms. Handy's misdemeanor FACE conviction was a "crime of violence" under the modified categorical

rule, but this was wrong in at least two respects: (1) it ignored that "force" under FACE does not require the use of "physical force against the person or property of another" necessary to constitute a crime of violence, and (2) "force" and "nonviolent physical obstruction" are separate means of committing a single offense. In either case, FACE sweeps more broadly than crime-of-violence "force" and, accordingly, is *not* a crime of violence for purposes of pre-sentencing detention.

## II. The FACE Act does not require physical force against another to convict.

Under controlling Supreme Court precedents, FACE's "force" clause, which authorizes misdemeanor convictions for *reckless* force (i.e., force that is not aimed at or intended to harm another), does not constitute a "crime of violence."

In *Johnson v. United States*, the Supreme Court clarified that "physical force" for purposes of the elements clause in the Armed Career Criminal Act ("ACCA") means "*violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010) (emphasis in original). As applied to a materially identical definition of "crime of violence" at issue in *Taylor*, the Court held that an attempted Hobbs Act robbery is not a "crime of violence" (which prohibits

even attempted use of force) because "there will be cases appropriately reached by a charge of attempted robbery, where the actor does not actually harm anyone or threaten harm." *Taylor*, 142 S. Ct. at 2020 (internal quotes omitted).

Critically, the Supreme Court also recently clarified that this type of "violent force" does not include *reckless* use of force. *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021). "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator *direct his action at, or target*, another individual"; "[r]eckless conduct is not aimed in that prescribed manner." *Id.* (plurality) (emphasis added) (holding that conviction for *reckless aggravated assault* is *not* a crime of violence). Justice Thomas's deciding concurrence (against a four-vote dissent) agreed that a "crime of violence" excludes reckless force, but for the separate reason that, in his opinion, the phrase "use of physical force" by itself "has a well-understood meaning applying only to *intentional acts designed to cause harm*." *Id.* at 1835 (Thomas, J., concurring) (emphasis added). Both the plurality and Justice Thomas agreed that the phrase "'use of force' denotes volitional conduct," but that violent force excludes volitional force

that is *not designed to (or will not knowingly) harm another. Id.* at 1826; *id.* at 1835 (Thomas, J., concurring).

The Supreme Court in *Borden* also recognized that it has already held that the phrase "use of force" *by itself*—in a statute defining "misdemeanor crime of domestic violence" as "use of physical force," without requiring that it be "against another"—*includes reckless force. See id.* at 1825. (citing *Voisine v. United States*, 579 U.S. 686 (2016)). In *Voisine* the Court held that while "use of physical force" requires "active employment of force," "the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm." 579 U.S. at 693. Thus, defining "misdemeanor domestic crime of violence" to include mere use of "physical force" includes conduct where "the actor has the mental state of intention, knowledge, *or recklessness* with respect to the harmful consequences of his volitional conduct." *Id.* (emphasis added).

These cases mean that a FACE "force" conviction is not a crime of violence. Like the definition of "force" at issue in *Voisine*, the FACE Act prohibits even the reckless use of force. Specifically, it forbids the use of "force" without requiring that it be *directed* "against another." 18 U.S.C.

§ 248(a)(1). Furthermore, it forbids the use of "force" with the intent to "injure[], intimidate[], *or interfere[] with*" another—i.e., it need not be *designed to harm another*, or actively employed knowing it will harm (or even contact) another. *Id.* (emphasis added). That means a FACE "force" conviction is not a "crime of violence" under either (or both) *Borden*'s plurality opinion or Justice Thomas's concurrence. *See Borden*, 141 S. Ct. at 1827 ("making [forceful] contact with another person" by "consciously disregard[ing] a real risk, thus endangering others" is mere reckless use of force); *id.* at 1835 (Thomas, J., concurring) (violent crime requires intent to harm).[5]

Notably, *Borden* and *Voisine* held that "volitional" force is not enough—it must be *directed at another*, *id.* at 1827, or "designed to cause harm," *id.* at 1835 (Thomas, J., concurring). In other words, the willful

---

[5] The four-vote *Borden* dissent would have held that reckless force *is* a crime of violence, but it did not dispute—and indeed relied on—the fact *Voisine* (from which Justice Thomas dissented) remains good law. *Borden*, 141 S. Ct. at 1838 (Kavanaugh, J., dissenting). *Voisine* held (despite Thomas's dissent) that "use of physical force" includes reckless force, and *Borden* held that reckless force is not a crime of violence. Thus, FACE's prohibition on untargeted "force" is not a crime of violence under these holdings, because untargeted force is merely reckless.

use of force in reckless disregard for others' safety is a real "use of physical force," but it is not a crime of violence.

The FACE Act applies to just such conduct. For example, FACE would prohibit willfully running at full speed into an open clinic doorway in reckless disregard for others' safety, including someone who suddenly appears in the doorway, if the runner intended merely to intimidate someone seeking an abortion. That would be a willful use of "force"—i.e., capable of causing injury or pain in another—but not *directed at* or *intended to harm* another. That is the sort of reckless force *Borden* held is not a crime of violence.

FACE's plain text would also prohibit use of physical force against *one's own person or property* with intent to interfere with abortion access. For example, if one violently disabled one's own vehicle (say, by destroying its tires and wheels with a sledgehammer) at the end of an abortion clinic's driveway in order to prevent staff and patients from entering, one would be using "force" capable of injuring another with the goal of stopping abortion, but in a manner not directed at or intended to harm another.

Indeed, if reckless *aggravated* assault is not a crime of violence under *Borden*, *a fortiori* a misdemeanor FACE "force" conviction cannot be, either. Therefore, a FACE "force" conviction sweeps more broadly than the crime-of-violence meaning of "force."

### III.  A misdemeanor FACE "physical obstruction" conviction also sweeps more broadly than crime-of-violence "force."

Furthermore, misdemeanor "physical obstruction" is not a "crime of violence" because it can necessarily include even "nonviolent physical obstruction." 18 U.S.C. § 248(b)(2). Critically, even non-"exclusively nonviolent physical obstruction" is not *categorically* a crime of violence. As with the "force" clause analysis, application of a general categorical approach is proper here because even non-"exclusively nonviolent physical obstruction" need not include violent physical obstruction. It's true that FACE subjects "exclusively nonviolent physical force" to a lesser punishment under 18 U.S.C. § 248(b)(2) (maximum six months imprisonment), rendering it a separate element of violating FACE. *See Mathis*, 579 U.S. at 518. But as noted, the modified categorical approach applies only if a statutory alternative matches with the definition of crime of violence. And here the alternative form of physical obstruction need not be violent.

A misdemeanor conviction for "physical obstruction" under subsection (b)(1) is broad enough to include an offense committed by *both* "force" (which sweeps too broadly for the reasons discussed above) *and non-violent physical obstruction* (which by its own terms sweeps too broadly). In short, the prohibited interference with abortion access can be committed "by" means of both force and nonviolent physical obstruction that is not "*exclusively* nonviolent physical obstruction." *Id.* § 248(b)(1), (b)(2) (emphasis added). Thus a misdemeanor FACE "physical obstruction" conviction does not "always require," *Taylor*, 142 S. Ct. at 2020, the jury to find "violent" physical obstruction—either because it is "exclusively nonviolent physical obstruction" under subsection (b)(2), or because even non-"exclusively nonviolent physical obstruction" can include *nonviolent* physical obstruction committed along with "force" (or threat of force) and punished co-equally under (b)(1).

For example, a defendant could be prosecuted under FACE for using non-crime-of-violence force upon entering a clinic and then kneeling in front of a "rarely used" and "generally locked" clinic door, thus allegedly obstructing clinic access nonviolently. *See* 18 U.S.C. § 248(e)(4) (defining physical obstruction to render ingress or egress to the facility

impassable or unreasonably difficult or hazardous); *United States v. Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001) (holding that nonviolently kneeling in front of clinic's generally locked emergency exit door was physical obstruction under FACE). Accordingly, under the general categorical approach, the jury did not *necessarily* have to find violent physical obstruction to convict for both force and physical obstruction. *See Mathis*, 579 U.S. at 526 (crime of violence enhancement "may be based only on what a jury 'necessarily found' to convict a defendant").

The Government argued below that the Eighth Circuit's post-*Taylor* decision in *United States v. Hari*, 67 F.4th 903 (2023), cuts against this approach. But *Hari* applied the modified categorical approach where the defendant was convicted of two expressly different crimes, enumerated in two different subsections. *Id.* The Court admitted that *Taylor* casts "substantial doubt" on whether the first subsection at issue—18 U.S.C. § 247(a)(1), prohibiting intentionally defacing, damaging, or destroying religious real property because of the religious character of that property, or attempting to do so—can now be considered a "crime of violence." 67 F.4th at 910-911. But it easily found that the second subsection at issue—§ 247(a)(2)—satisfies the "force" clause because it prohibits

intentionally obstructing only "*by force or threat of force*" another person's free exercise of religion or attempting to do so. Thus, the Government is always "always required" to prove "force or threat of force" as an element of the offense under § 247(a)(2).

The same cannot be said of the Government's burden to prove a violation of 18 U.S.C. § 248(a)(1), since the prohibited injury, intimidation, or interference can occur by "force," "threat of force," "*or physical obstruction*," including "nonviolent physical obstruction." § 248(a)(1), (b)(1), (b)(2).

The District Court's contrary conclusion below was predicated on a misreading of the statute. Specifically, the District Court explained that § 248(b)(1) separately punishes "more serious misdemeanors" involving "use of force, the threat of force, or the use of *violent* physical obstruction," since "*nonviolent* physical obstruction" is separately and less severely punished in § 248(b)(2). Order at 3 (emphasis in original). This is not true. Rather, as noted, § 248(b)(2) provides a less severe punishment only for "*exclusively* nonviolent physical obstruction." (Emphasis added.) The higher punishment in subsection (b)(1) can thus apply to "physical

obstruction" *either* when it is violent *or* when it is "nonviolent" but is not the only FACE violation the defendant committed (i.e., not "exclusive").

The District Court thus wrongly concluded that Defendants were necessarily convicted of "violent physical obstruction" because the jury found the presence of both "force" and "physical obstruction" on the special verdict form. Order at 3. Nothing on the special verdict form required the jury to find that the alleged non-exclusive physical obstruction was *violent*; nor was it required to do so under the Act.

Simply put, a misdemeanor conviction for "force" and "physical obstruction" under subsection (b)(1) sweeps more broadly than the crime-of-violence definition of force. Thus Ms. Handy's conviction was not a "crime of violence" for purposes of pre-sentencing detention, contrary to the District Court's Order.

## IV. Ms. Handy is entitled to be released under § 3143(a)(1) because she is not a flight risk or a danger to others.

Under § 3143(a)(1), this Court "*shall* order the release of the" Defendants where it finds "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." (Emphasis added). But Defendants have been on pre-trial release since their arrest

in March 2022. (*See, e.g.,* D.D.C. Minute Entry of March 30, 2022). Defendants have never posed any flight risk or threat of danger to others or the community during that time—otherwise, they would not have been eligible for such release. *See* 18 U.S.C. § 3142(b) (authorizing pre-trial release unless a judicial officer determines there would be a flight risk or a danger to others). The Government has not contended otherwise, and it did not request pre-sentencing detention. Simply, Defendants' more-than-17-months of prior good behavior on pre-trial release provides overwhelming evidence that they satisfy the terms for mandatory release under § 3143(a)(1), prior to sentencing.

To determine whether a defendant subject to § 3143 poses a risk of flight or danger, the Court may consider the factors set forth in § 3142(g). *See United States v. Tann,* No. 04–392, 2006 WL 1313334, at *4 (D.D.C. May 12, 2006). These factors include the nature and circumstances of the offense charged, the weight of the evidence, the defendant's history and characteristics, which include whether the defendant was on parole or probation at the time of the current offense, and the danger that the defendant's release could pose to any person or to the community. 18 U.S.C. § 3142(g).

As argued without opposition below, Ms. Handy is a prominent national nonprofit leader. In 2017, she founded Mercy Missions, a mutual aid organization dedicated to helping families and mothers in crisis pregnancies and providing survival aid for houseless people. Her charitable work and desire to help people and particularly families have led to previous arrests and charges for, primarily, trespassing. There is no evidence that Ms. Handy poses a danger to the safety of any person or the community.

As noted, Ms. Handy also does not pose a flight risk. On March 30, 2022, this Court set conditions of release for Ms. Handy pending her trial. Since then, Ms. Handy had not violated any conditions of her release and had appeared for every scheduled court proceeding. She made no efforts to flee, and there is no evidence that she would attempt to flee now. Clear and convincing evidence exists that Ms. Handy is not likely to flee or pose a danger to the safety of any other person or the community if released under § 3143(a)(1). Ms. Handy must be released pending sentencing.

## CONCLUSION

Accordingly, Defendant Lauren Handy respectfully requests that this Court reverse, as an emergency matter, the District Court's order

sentencing Ms. Handy to pre-sentencing detention, and that Ms. Handy be immediately released from that ongoing detention.

Respectfully submitted,

*/s/ Martin A. Cannon*

Martin A. Cannon, Esquire (Application for Admission Pending)
Stephen Crampton, Esquire (Application for Admission Pending)
Thomas More Society
10506 Burt Circle, Suite 110
Omaha, Nebraska 68114
Email: mcannonlaw@gmail.com
Phone: (402) 690-1484


*/s/ Dennis E. Boyle*

Dennis E. Boyle, Esquire
Boyle & Jasari
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
dboyle@boylejasari.com
Telephone: (202) 798-7600

*Counsel for Appellant*


Dated: September 5, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of September, 2023, I caused the foregoing motion to be filed with the Clerk of Court for the United States Court of Appeals for the D.C. Circuit using this Court's CM/ECF system, which will serve all counsel of record.

_/s/ Dennis E. Boyle_
Dennis E. Boyle

## ADDENDUM

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1), defendant-appellant Lauren Handy hereby certifies that the parties that appeared in the district court and that are now before this Court are Lauren Handy (defendant-appellant) and the United States (appellee).

## CERTIFICATE OF LENGTH

I hereby certify that this Motion complies with the type-volume limitation of D.C. Circuit Rule 27(d)(2)(A). Appellant's Motion contains 4,599 words.

/s/ Dennis E. Boyle
Dennis E. Boyle